**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANDRE JOHNSON | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 13-cv-02963 |
| CITY OF PHILADELPHIA *et al.* | : | |
| Defendants. | : | |

**MEMORANDUM**

YOHN, J. August 7, 2013

Plaintiff, Andre Johnson, brings this action against the City of Philadelphia (the "City"), probation officer Vince Sterdardo, and an unnamed supervisor ("John Doe I")[1] in the Philadelphia Adult Probation and Parole Department ("APPD"), alleging various violations under the Constitution, along with claims of false arrest and false imprisonment for his arrest and detention as a result of an erroneous bench warrant. Specifically, Johnson alleges a deprivation of his Fourth and Fourteenth Amendment rights, along with false arrest and false imprisonment, by the City and John Doe I under 42 U.S.C. § 1983. He also states claims of false arrest and

[1]The caption of Johnson's complaint alleges claims against the City, John Doe I, and Sterdardo. In count I, he alleges various violations of federal law against the City, John Doe I, and John Doe II. Johnson does not make any other mention of John Doe II in his complaint or in his response to the defendants' motion to dismiss. Accordingly, I assume that the reference to John Doe II in count I is merely a typographical error.

false imprisonment against Sterdardo.[2] Before me is the City's and Sterdardo's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which also asserts immunity defenses under federal and state law. For the reasons stated below, the defendants' motion to dismiss will be denied.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Johnson, a probationer of the City, alleges that at some time prior to October 29, 2012, he received a subpoena to appear in court for a "routine probation hearing" scheduled for that date. (Am. Compl. ¶ 9.) Due to Hurricane Sandy, however, the courts in Philadelphia County were closed on October 29 and October 30, 2012. (*Id.* ¶ 11.) Consequently, Johnson's probation hearing was canceled.

The probation hearing was rescheduled for Thursday, November 1, 2012. (*Id.* ¶ 12.) Johnson claims, however, that he never received notice of the rescheduling. (*Id.*) It was his intention to ask his probation officer, Sterdardo, about the hearing and its rescheduling when he met with Sterdardo on Monday, November 5, 2012, for a previously planned meeting. (*Id.* ¶ 13.) That meeting never occurred, as Johnson was arrested in the early morning of November 5, 2012, by the City of Philadelphia Sheriff's Office ("Sheriff's Office") on a bench warrant that had been issued because of Johnson's failure to appear for the rescheduled probation hearing. (*Id.* ¶ 14.)

After being detained by the Sheriff's Office, Johnson was transported to Curran-Fromhold Correctional Facility ("CFCF"). (*Id.* ¶ 15.) While being held at CFCF, Johnson learned that Sterdardo had sought the bench warrant due to Johnson's failure to appear in court

[2] It is not clear from the complaint whether Johnson alleges the false arrest and false imprisonment claims against Sterdardo under federal or state law.

on October 31, 2012, even though his original hearing was scheduled for October 29, 2012.[3] (*Id.* ¶ 16.) Johnson also learned that he was not to receive a hearing for his probation violation in connection with the bench warrant for thirty days, and as a result would remain at CFCF through November 2012. (*Id.* ¶ 18.) Johnson was able to contact a friend, who in turn contacted the APPD and explained the sequence of events which led to Johnson's detention. (*Id.* ¶ 19.) Thereupon, the APPD moved Johnson's probation violation hearing to November 8, 2012. (*Id.*)

On November 8, 2012, Johnson was transported from CFCF to the Criminal Justice Center in Philadelphia for his probation violation hearing. (*Id.* ¶ 20.) While awaiting his hearing, Johnson was informed that the bench warrant upon which his arrest was based was erroneously issued, and that he would be released from incarceration after being transported back to CFCF. (*Id.* ¶ 21.) Johnson was sent back to CFCF that same day, and subsequently released on the evening of November 9, 2012. (*Id.* ¶ 22.)

As a consequence of the issuance of the erroneous warrant, and the arrest and detention that ensued, Johnson filed a complaint with the Court of Common Pleas of Philadelphia County on April 5, 2013. Following preliminary objections filed by the City, Johnson submitted an amended complaint on May 21, 2013. Thereafter, the defendants removed the case to the Eastern District of Pennsylvania and filed this motion to dismiss.

## II. LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and

[3] The discrepancy between October 31, 2012, and November 1, 2012, as the alleged hearing date is not explained.

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). The pleading standard of Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice. *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must contain sufficient factual matter to be plausible on its face. *See id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; a sheer possibility that a defendant acted unlawfully is not sufficient. *Id.* Therefore, to survive a motion to dismiss, a plaintiff must allege facts sufficient to "nudge[] [his or her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## III. DISCUSSION

Johnson alleges that the issuance of the erroneous warrant resulted in his unlawful arrest and detention. Accordingly, he argues that the City and John Doe I have deprived him of his Fourth and Fourteenth Amendment rights under the Constitution through his false arrest and false imprisonment. (Am. Compl. ¶¶ 29–30.) He brings suit pursuant to 42 U.S.C. § 1983. Johnson also claims that Sterdardo's actions resulted in his false arrest and false imprisonment. (*Id.* ¶¶ 36–37.) The City and Sterdardo object to Johnson's complaint, arguing that Johnson fails to state a claim upon which relief can be granted and that the defendants, as government actors, are immune from suit. I will address these arguments as they apply to each defendant.

### A. Claims Against the City Pursuant to 42 U.S.C. § 1983

In count I of his complaint, Johnson alleges that the issuance of an erroneous bench warrant resulted in his false arrest and imprisonment, a violation of his Fourth and Fourteenth Amendment rights under the Constitution. The defendants advance two arguments against Johnson's claims. First, the defendants argue that under Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat. Ann. § 8541, the City is immune from suit. Second, the defendants contend that Johnson has failed to state a *Monell* claim against the City under 42 U.S.C. § 1983 because Johnson has not alleged a City policy or custom that led to the deprivation of his constitutional rights. Both arguments are unavailing.

Count I of Johnson's complaint specifies that his claims against the City are brought pursuant to 42 U.S.C. § 1983. "[T]he PSTCA cannot immunize a municipality or political subdivision against a federal cause of action. The governmental immunity statute, although effective against a state tort claim, has no force when applied to suits under the Civil Rights Act." *Vicky M. v. Ne. Educ. Intermediate Unit 19*, 486 F. Supp. 2d 437, 460 (M.D. Pa. 2007) (internal citations omitted); *see also Buskirk v. Seiple*, 560 F. Supp. 247, 250 (E.D. Pa. 1983) ("Pennsylvania's legislation cannot, however, immunize state actors who abrogate federal constitutional or statutory rights; § 1983 specifically protects such rights."). Accordingly, because Johnson's claims are made pursuant to federal law, the defendants' argument that the City is immune from suit under the PSTCA fails.

The defendants' second argument is that the City cannot be held liable under *Monell* because Johnson has not alleged that a City policy or custom led to the deprivation of his constitutional rights. "When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy,

regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). In his complaint, Johnson alleges that "[b]y allowing the erroneous warrants to be issued, the City and John Doe I were enforcing or acquiescing to *a custom, policy and practice of the City*." (Am. Compl. ¶ 28 (emphasis added).) In his response to the defendants' motion to dismiss, Johnson clarifies that the City's issuance of warrants for a probationer's failure to appear in court when the courts were closed is the policy or custom that led to the violation of his constitutional rights. (Pl.'s Resp. 5.) Therefore, the defendants' argument that Johnson has not stated a *Monell* claim because he has not identified a City policy or custom also fails.[4]

I take note, however, of the defendants' footnote argument that the City is the wrong defendant in this case because both the issuance of the erroneous bench warrant by the Court of Common Pleas of Philadelphia County, and Johnson's subsequent arrest by the Sheriff's Department, were actions taken by entities that the City claims fall under the unified judicial system of Pennsylvania, and therefore would be extensions of the Commonwealth, not the City. (Mot. to Dismiss 6 n.1.) I agree that the Court of Common Pleas of Philadelphia County is part of Pennsylvania's unified judicial system, and thus an arm of the Commonwealth. *See* 42 Pa. Cons. Stat. Ann. § 301; *Callahan v. City of Phila.*, 207 F.3d 668, 672 (3d Cir. 2000) (stating all Pennsylvania courts are part of the unified judicial system, and thus are part of the Commonwealth government). The Philadelphia County Sheriff's Department is a local

---

[4]Although not set forth with this specificity in the complaint, plaintiff would presumably include this allegation in an amended complaint.

government agency, however, and therefore amenable to suit through the City. *See Butts v. SCI-Camp Hill*, 08-cv-2259, 2009 WL 222653, at *1 (M.D. Pa. Jan. 29, 2009) (dismissing Philadelphia Sheriff's Department from suit because, as an administrative arm of a local municipality, correct defendant was the City of Philadelphia). Additionally, the Third Circuit has stated that a municipality may be liable under *Monell* for its failure to provide safeguards against the issuance of erroneous warrants, even where the warrant was approved by a Commonwealth court. *See Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276-77 (3d Cir. 2000). Thus, while the extent of the City's involvement in the warrant process may be disputed, and whether its procedures, or lack thereof, for preventing the issue of erroneous warrants may be challenged, those are fact-sensitive issues that can be addressed in later proceedings. Because Johnson has alleged facts that support a plausible claim for which he may be entitled to relief, should those facts be proven later in the course of this litigation, his claim against the City will not be dismissed.

### B. False Arrest and False Imprisonment Claims Against Sterdardo

In count II, Johnson alleges claims of false arrest and false imprisonment against probation officer Sterdardo. The defendants challenge these claims, arguing that the claims fail under § 1983 because Sterdardo's conduct was negligent, and negligence is not actionable in a civil rights claim. They also assert that Sterdardo is immune from suit under Pennsylvania immunity laws. Because it is not clear whether Johnson brings these claims under federal or state law (or both), I will address the defendants' immunity argument under both.

#### 1. Negligence under 42 U.S.C. § 1983

"Section 1983 provides remedies for deprivations of rights established in the Constitution

or federal law. It does not, by its own terms, create substantive rights." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). "To state a § 1983 claim, a plaintiff must demonstrate that the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." *Id.* Here, Johnson has alleged that Sterdardo, a state actor acting under color of law, committed false arrest and false imprisonment—both constitutional torts—thus depriving him of his liberty rights secured by the constitution. *See Brockington v. City of Phila.*, 354 F. Supp. 2d 563, 568 (E.D. Pa. 2005) (acknowledging that false arrest and false imprisonment are actions taken without probable cause, and therefore constitutional violations actionable under § 1983). The defendants argue, however, that Sterdardo's actions were not intentional but negligent, and that negligence is not actionable under § 1983. (Mot. to Dismiss 9). "This argument is simply wrong." *Pitchford v. Borough of Munhall*, 631 F. Supp. 2d 636, 651 (W.D. Pa. 2007) (referring to similar argument premised on the incorrect assertion that negligent conduct is not actionable under § 1983).

In *Parratt v. Taylor*, the Supreme Court stated that "[s]ection 1983, unlike its criminal counterpart, 18 U.S.C. § 242, has never been found by [the] Court to contain a state-of-mind requirement." 451 U.S. 527, 534 (1981), *overruled on other grounds by Daniel v. Williams*, 474 U.S. 327 (1986). In *Daniels v. Williams*, the Supreme Court affirmed that conclusion, but further explained that "in any given § 1983 suit, the plaintiff must still prove a violation of the underlying constitutional right; and depending on the right, merely negligent conduct *may not be enough* to state a claim." 474 U.S. at 330 (emphasis added). "Where negligence is sufficient to establish an underlying violation of federal law, negligence is sufficient to establish liability under § 1983." *Pitchford*, 631 F. Supp. 2d at 652. The proper inquiry, then, is not whether

negligent conduct can support a § 1983 claim, but whether claims of false arrest and false imprisonment can survive as a matter of law if Sterdardo's conduct was, in fact, merely negligent. In this case, such an inquiry is not necessary, because Johnson alleges in his complaint that Sterdardo's conduct was willful. (Compl. ¶¶ 33, 38.) Accordingly, the defendants' argument that count II should be dismissed because civil rights claims are not actionable when the state actor's alleged conduct was negligent is unavailing.

**2. 42 U.S.C. § 1983 immunity[5]**

The defendants' next argument is that Sterdardo is immune from suit.[6] With respect to a suit under § 1983, the Third Circuit has held that "probation and parole officers are entitled to absolute immunity when they are engaged in adjudicatory duties. In their executive and administrative capacity, probation and parole officers are entitled only to a qualified, good faith

---

[5]Suits under 42 U.S.C. § 1983 must be brought against a "person." In the motion to dismiss, the defendants cite *Callahan v. City of Philadelphia*, 207 F.3d 668 (3d Cir. 2000), for the proposition that the Philadelphia Sheriff's Department and the Court of Common Pleas of Philadelphia County are not amenable to suit because they are both entities of the unified judicial system, and thus arms of the Commonwealth. I addressed that argument, *supra*, at III A. To the extent that the defendants rely on *Callahan* for the proposition that Sterdardo cannot be sued because he is also an entity of the state, and not a "person," that argument fails. In *Callahan*, the Third Circuit held that "components of the judicial branch of the Pennsylvania government are state entities and thus are not persons for section 1983 purposes." *Callahan*, 207 F.3d at 674. The "components" at issue in that case were the Warrant Division of the First Judicial District, and the Municipal Court Eviction Unit. *See id*. at 669. While the Third Circuit has certainly recognized that the APPD is not a "person," but an entity of the state, *see, e.g., Thompson v. Burke*, 556 F.2d 231, 232 (3d Cir. 1977), it has also recognized the parole and probation officers are "persons," and thus amenable to suit under § 1983, *see id*. at 236.

[6]I note that Johnson's complaint seeks monetary damages against Sterdardo. Thus, while not stated in the complaint, I assume that the claim against Sterdardo is brought against him in his personal capacity. Had the claim been pursued against Sterdardo in his official capacity, it would have been barred by the Eleventh Amendment. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

immunity." *Wilson v. Rackmill*, 878 F.2d 772, 775 (3d Cir. 1989); *see also Harper v. Jeffries*, 808 F.2d 281, 284 (3d Cir. 1986). Seeking a bench warrant is an executory function, not an adjudicatory duty. *See Spiker v. Allegheny*, 10-cv-864, 2013 WL 373579, at *17 (W.D. Pa. Jan. 30, 2013); *McBride v. Cahoone*, 820 F. Supp. 2d 623, 637–38 (E.D. Pa. 2011). Accordingly, Sterdardo is not entitled to absolute immunity.

"Under the qualified immunity principle, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McBride*, 820 F. Supp. 2d at 635–36 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Supreme Court has established a test for determining whether qualified immunity is appropriate: "(1) whether the official's conduct violated a constitutional or federal right; and (2) whether the right at issue was 'clearly established.'" *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "A right is clearly established for qualified immunity purposes where its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Saucier*, 533 U.S. at 202). "[J]udges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"A claim under § 1983 for false arrest/false imprisonment is grounded in the Fourth Amendment guarantee against unreasonable seizures." *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 592 (M.D. Pa. 2008). Thus, Johnson has stated a violation of his constitutional rights, satisfying

the first prong under *Saucier*. Furthermore, "[i]t is well-established that the Fourth Amendment 'prohibits [an arrest of] a citizen except upon probable cause.'" *Reedy v. Evanson*, 615 F.3d 197, 211 (3d Cir. 2010)) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). Here, Johnson has alleged that Sterdardo willfully sought a bench warrant for Johnson's failure to appear in court, when Sterdardo knew that the courts had been closed and that Johnson never received notice of the rescheduled court date, thus resulting in the issuance of a warrant that Sterdardo knew was unsupported by probable cause. Accordingly, Johnson has alleged the violation of a right that is clearly established, satisfying the second prong. Hence, taking the allegations set forth in the complaint as true, as I am required to do in a motion to dismiss, it would be inappropriate to grant Sterdardo qualified immunity at this stage in the litigation.

**3. Immunity under Pennsylvania law[7]**

As stated above, it is not entirely clear whether Sterdardo brings his false arrest and false imprisonment claims under federal or state law. If the claims are brought pursuant to Pennsylvania law, then immunity is governed by state statute. "The probation department is an arm of the state, and its employees are state actors, making them subject to sovereign immunity." *Clark v. Conahan*, 737 F. Supp. 2d 239, 258 (M.D. Pa. 2010) (citing *Haybarger v. Lawrence Cnty. Adult Prob. and Parole*, 551 F.3d 193, 198 (3d Cir. 2008)). Pennsylvania's sovereign immunity statute states:

---

[7]The Third Circuit has held that "Pennsylvania's judicial districts, including their probation and parole departments, are entitled to Eleventh Amendment immunity." *Haybarger v. Lawrence Cnty. Adult Prob. and Parole*, 551 F.3d 193, 198 (3d Cir. 2008). "Eleventh Amendment immunity is not absolute," however, and a state or state entity can waive such immunity "by taking voluntary action inconsistent therewith." *Id*. While this is not a case in which Pennsylvania waived its immunity, as is further discussed in this section, I note once again that the Eleventh Amendment does not apply because Sterdardo is sued in his personal capacity.

> Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. . . .

1 Pa. Cons. Stat. Ann. § 2310.

The Pennsylvania General Assembly has waived sovereign immunity in nine instances: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. *See* 42 Pa. Cons. Stat. Ann. § 8522(b). Because false arrest and false imprisonment are intentional torts that do not fall under any of these exceptions, *see Cruz ex rel. Alvarez v. City of Phila.*, No. 07-493, 2008 WL 4347529, at *10 (E.D. Pa. Sept. 23, 2008), Sterdardo enjoys sovereign immunity if his actions were taken "within the scope of his duties." 1 Pa. Cons. Stat. Ann. § 2310. "Conduct of an employee is within the scope of employment when it is of a kind and nature that the employee is employed to perform, it occurs substantially within the authorized time and space limits, and the action is prompted, at least in part, by a purpose to serve the employer." *Clark*, 737 F. Supp. 2d at 258.

"Unlike the immunity afforded to local government agencies under the PSTCA . . . '[w]illful misconduct does not vitiate a Commonwealth employee's immunity if the employee is acting within the scope of his employment.'"[8] *Spiker v. Allegheny Cnty. Bd. of Prob. and Parole*,

---

[8]In his response to defendants' motion to dismiss, Johnson argues that Sterdardo's actions rose to the level of willful misconduct, and therefore immunity is prohibited under the willful misconduct provision of the PSTCA, 42 Pa. Cons. Stat. Ann. § 8550. Section 8550, however, only applies to local governmental agencies and employees. *See* 42 Pa. Cons. Stat. Ann. § 8541. As discussed above, Sterdardo is a state employee, and thus falls under Pennsylvania's sovereign

No. 10-864, 2013 WL 373579, at *22 (W.D. Pa. Jan. 30, 2013) (quoting *Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010)). "Intentional torts that are 'unprovoked, unnecessary or unjustified by security concerns or penological goals' do not, as a matter of law, fall within the scope of employment." *Minyard v. City of Phila.*, No. 11-246, 2012 WL 3090973, at *6 (E.D. Pa. July 31, 2012) (quoting *Wesley v. Hollis*, No. 03-3130, 2007 WL 1655483, at * 14 (E.D. Pa. June 6, 2007)). Additionally, one court has noted that where an officer makes an arrest pursuant to a warrant he knows to be erroneous, the officer's actions are "outside the scope of employment because [the actions] no longer serve the interests of the employer." *Perkins v. Staskiewicz*, No. 08-1651, 2009 WL 693176, at *4 (W.D. Pa. Mar. 13, 2009). It follows, then, that the same would hold true for an officer who purposefully seeks an erroneous warrant.

      Here, Johnson has alleged that Sterdardo purposefully sought the erroneous warrant. This allegation, which I must take to be true for the purpose of a motion to dismiss, would appear to place Sterdardo's conduct outside the scope of his employment, as the Commonwealth has no interest in arresting citizens on erroneous warrants. Therefore, based on the allegations in the complaint, sovereign immunity is not appropriate for Sterdardo at this time.[9]

---

immunity statute. Thus, section 8550 is not applicable.

    [9]I acknowledge that "[t]he Supreme Court 'repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). At this stage in the litigation, however, the facts are too unclear as to whether immunity is appropriate. Facts may develop that would make a contrary finding appropriate. The defendants are free to renew the argument invoking sovereign immunity at such a time.

## IV. CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss will be denied. An appropriate order follows.